# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE-OPELOUSAS DIVISION

Walter K. Jamison, III       Civil Action No. 04-2483

versus            Judge Tucker L. Melançon

United States of America     Magistrate Judge Methvin

## MEMORANDUM RULING

Before the Court is a Motion to Dismiss and in the Alternative Motion for Summary Judgment filed by defendant United States ("United States") [Rec. Doc. 19] and plaintiff Walter K. Jamison, III's ("Jamison") Memorandum in Opposition thereto [Rec. Doc. 24]. Also before the Court is plaintiff's Motion for Summary Judgment on Liability [Rec. Doc. 22] and the United States' Response [Rec. Doc. 30]. For the following reasons, the motions will be denied.

### Background

Plaintiff's claims arise out of his alleged February 26, 2003 accident which occurred when plaintiff, a lawyer, was attending a settlement conference at the federal courthouse in New Orleans. In his complaint, filed December 9, 2004 pursuant to the Federal Tort Claims Act ("FTCA"), plaintiff alleges that he has presented a claim in writing to the Administrative Office of the United States Courts for damages in the amount of $250,000 and that, other than requesting additional information which he provided, the Administrative Office has never responded to the claim, and six months have elapsed since its presentation [Rec. Doc. 1, para. 10]. The United States

confirms in its Memorandum that the claim was received on November 24, 2003 [defendant's  Memorandum, Rec. Doc. 19, p. 2].[1]

Plaintiff alleges that, during the settlement conference in Judge Barbier's chambers, it became necessary for him to make a telephone call to his client, and he stepped into a separate office in the chambers.  Judge Barbier's recollection was that the room was rarely used and was used only for things like Jamison used it for, where an attorney needed to make a private phone call [Judge Barbier Depo. p. 9].  Judge Barbier stated that it was possible that attorneys used the room for conferences with the their clients although he did not remember it being routinely used for that purpose [Id.].  Plaintiff claims that, when he sat in a chair in the room, it collapsed, propelling him backwards into a bookcase on which he struck his head.  Plaintiff described the accident as follows in his deposition:

> I sat at the desk. They had a chair. It didn't look like this; the chair I am sitting in. But it was a black chair. And when I sat in it, as if I – if this is the table that I am facing, and I am facing you; phone would have been in front of me. The chair would have been close to the desk. And I sat in the chair. It propelled backwards and there was a bookcase behind me. As I recall, I may be wrong, it was one of these almost floor-to-ceiling bookcases and I struck the bookcase at the base of my skull. Ed Sutherland kind of got up, helped me up. It didn't knock me out. It dazed me a little bit. And then Judge Barbier was called and they called the federalies and the police came over. That's the accident.

---

[1]

"The subject matter jurisdiction of the court is conditioned on compliance with 28 U.S.C. § 2675(a), which declares that 'an action shall not be instituted' unless the plaintiff has filed an administrative claim and either obtained a written denial or waited six months." *Price v. U.S.*, 69 F.3d 46, 54 (5th Cir. 1995). *See also Taylor v. Federal Home Loan Bank Bd.*, 661 F. Supp. 1341, 1350 (N.D. Tex. 1986).

[Jamison Depo. p. 14].

Jamison stated in his deposition that after the accident he heard someone make a comment to the effect that the chair should not have been in there; it was supposed to have been removed, although he could not remember the specific words or who said it [Jamison Depo. p. 24].

Following the accident, Edgar A. Algere, Jr., a protection officer for the Department of Homeland Security, was called to the scene and found that two of the four screws that support the back of the chair were missing:

> Well, the chair appeared to have been relatively new.  And it appeared that it hadn't been completely assembled yet; like, there was – the way this thing was designed, there was four screws or bolts that would stabilize the chair – that would stabilize the cushion, that is, the back of the chair – it was all one piece – to the base of the chair.  Well, of the four screws or bolts that should have been in there, only two of them was in, which were the two back screws.  The two front screws hadn't been attached to the chair in order to keep it stable on the base.

Officer Algere documented the chair's stock number, which was stenciled on the underside of the seat [Alger Depo. p. 10].

Property and Procurement Administrator, Barry Johnson, ("Johnson"), an employee of the Clerk's office, described his duties:

> We do everything from ordering all of the furniture and all of the equipment.  We do maintenance; as far as, maintenance contracts on systems equipment, telephone systems.  We take care of the phone system.  We do basically all of the courthouse support; taking care of the judges and chambers whatever they need and so forth like that, move furniture, move boxes, record shipments, all of that.

[Johnson Depo. p. 6].  When asked if he was called when an employee has a problem with  something breaking and needing maintenance, Johnson stated:

3.

> Yes.  They normally do.  It depends if it's – you have to remember we
> have building maintenance which is taken care of by GSA, and then
> we have other maintenance which is taken care of by us.  Normally,
> the secretaries call us for just about everything and then we direct it to
> wherever.

[Id.].  According to Johnson, the United States periodically conducts an inventory

of office furniture when a stock number, a tag, is stenciled on the underside of the

chair [Johnson Depo. p. 5, 17, 25-26].  Johnson described the furniture inventory

process as follows:

> That comes under our furniture guidelines that periodically we are
> supposed to do a furniture inventory; like, if the chief of the clerk of
> court leaves or if the chief deputy leaves and we have been working
> to try – in a building this size, it's very hard to keep the furniture
> straight, and usually it does fall into the procurement group.  There
> was one time when we had a larger inventory of furniture where we
> had the courtroom deputies checking furniture for us and everything
> like that.

[Johnson Depo. p. 18].  When questioned when the last inventory check was done,

Johnson stated:

> It's an ongoing thing.  I hate to tell you that, but it is.  We're in the
> process of doing it now.  Because what happens is, so many times –
> especially, like Judge Barbier, when he first came on, he was on the
> third floor.  He has since moved down to the second floor where
> Judge Sears was.  And he's inherited some of Judge Sear's old
> furniture, and he took some of the furniture from the third floor down
> with him.  Then we have new judges that come on that they will get
> furniture from other areas that aren't being used.  So, it's a constant
> thing of the moving and so forth like that.

[Id.].

When asked later in his deposition to clarify the inventory process, Johnson

explained:

4.

Whenever we get new furniture in, it's always inventoried and put in the inventory software to whatever particular judge it's going to. Normally, whenever a judge moves – like, Judge Barbier moved from the third floor to the second floor; in our inventory, we had him at 308 or whatever the room was.  I'm just using that as just a number.  Okay?  So, when he moved down to whatever number it was, we go down to straighten out the inventory.  We'll physically go to two, inventory everything he's got there.  Then we'll go back up to three and inventory what's left, because there is still furniture on the third floor for whoever comes into those chambers.  Like, right now, whatever Judge Barbier left on three is labeled for Judge Livaudais because Livaudais moved into Judge Barbier's vacated spaces. Now, again, in – we're not require to inventory all of this furniture every year or every two years.  Once it's in inventory, it's supposed to be fine – I mean, not say fine.  Again, we're not supposed to do it every-so-may years.  We do it because we move so much furniture around.  And then periodically, they'll say, "Okay.  We have extra people.  Let's redo all of the furniture inventories and kind of clean up."

[Id. pp. 26-27].

 Judge Barbier's testimony was that after he was appointed  to the bench in 1998 he replaced most of the previous judge's furniture  [Deposition of Judge Carl J. Barbier pp. 5, 7, 8], and that he did not buy the chair new and he was "pretty sure" the chair was not part of the previous judge's assortment when he moved there [Id. p. 14].  Judge Barbier could not remember where the chairs in the attorney conference room came from but that he recalled that he "moved in some black leather chairs" from somewhere else in the courthouse when he moved into the chambers [Id. pp. 13-14].  The normal procedure would have been to have it inventoried at the time it was relocated to Judge Barbier's chambers [Johnson Depo. pp. 26-27].

Following the incident, Johnson retrieved the chair [Id. p. 8].  Johnson noticed:

5.

> The only thing I can tell you about the chair is when I grabbed it, it actually went back.  It wasn't that – if I remember right, it wasn't – when you have a pivoting chair, you have the frame with the spring mechanism.  It was not that.  It was like screws were out of the chair itself in the front, not in the back, and so it allowed it to pivot.

[Id.].   As to whether the problem with the chair was visible, Johnson stated:

> I wouldn't think so.  I mean there was nothing, no indication, because we had the chair by us and we had to put a tag on it: "Do not sit on." Because we held it down there for a few days before we had it repaired.  And it was one of those things when it was pushed up in a normal position, it was just sitting there.  I couldn't see – I know what you're asking.  Would I have sat in it?  Probably so.  Because I didn't – you wouldn't realize that there were bolts missing.

[Id. p. 23].  In order for someone to realize the problem, Johnson testified:

> Well, to me, if anybody grabbed the chair – you know, how you get a chair if it has to be moved or something – the minute you grabbed the back, it moved.

[Id.].  Johnson also testified:

> This was an older chair, so I wouldn't think it came that way from the manufacturer.  It's almost like, maybe, some way or another they had backed out. There were no bolts on the floor.

[Id. p. 9].  Johnson described the manner in which chairs are inventoried:

> Well, in dealing with these chairs and trying to find the furniture tags [stock number], you always have to turn them over almost, tilt them, whatever . . . If you're actually looking for a tag, you have to normally grab and move it to either look under the arm or on the base. Someone would have known if it was broken.

[Id p. 25].

Johnson stated that, when it was discovered the chair was broken, he

removed it from the room and placed a tag on it, stating "Do not sit on" [Id. p. 24].

Johnson also testified that, prior to the incident at issue, no one told him that the

chair was broken nor did he have any notice that it was broken [Id.].  When questioned whether he assumed, that if somebody knew the chair was broken, it would have been reported, Johnson replied, "We would hope so.  But, again, we would never have left the chair like that.  There's just no way." [Id.].

*LAW AND ANALYSIS*

I.  *Standards of Law*

A.  *Motion to Dismiss for Lack of Jurisdiction*

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id*.  In a 12(b)(1) motion, the party asserting jurisdiction bears the burden of proof that jurisdiction does in fact exist.  *Id*. "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id*.  When considering a Rule 12(b)(1) motion to dismiss with a motion for summary judgment in the alternative, the Court must determine if subject matter jurisdiction is present before considering the substantive arguments of the summary judgment motion. *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1157 (5th Cir. 1981); *Cupit*

7.

*v. United States of America*, 964 F. Supp. 1104, 1106 (W.D. La. 1997).  "When a defendant makes a 'factual attack' on the court's jurisdiction, the plaintiff must 'prove the existence of subject-matter jurisdiction by a preponderance of the evidence.' An attack is 'factual' rather than 'facial' if the defendant 'submits affidavits, testimony, or other evidentiary materials.'  The plaintiff is obliged 'to submit facts through some evidentiary method' to sustain his burden of proof." *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989).

### B.  Motion For Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56;  *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, its motion must be

denied. If it succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[2] *Id.* at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set for *specific* facts sufficient to establish that there is a genuine issue of material fact requiring a trial.  *Celotex Corp.* 477 U.S. at 324; Fed.R.Civ.Pro. 56(e).  The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir.1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

---

[2]

   The moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325.  To oppose a summary judgment motion successfully, a party must be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

## II.  The Federal Tort Claims Act ("FTCA") Generally

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. Sovereign immunity is jurisdictional in nature. Indeed, the "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." *F.D .I.C. v. Meyer*, 114 S. Ct. 996 (1994). One of the vehicles by which the United States has consented to be sued is the Federal Torts Claims Act, 28 U.S.C. § 1346 et seq., which is a limited waiver of sovereign immunity that subjects the United States to liability to the same extent as a private party for personal injury or property loss caused by the negligence of its employees in the course and scope of their employment. *Williamson v. U.S. Dept. of Agriculture*, 815 F.2d 368, 374 (5th Cir. 1987); *Toney v. U.S. Dept. of Army*, No. 05-30421, 2006 WL 3455954, **2 (5th Cir. Nov. 30, 2006). The law of the state in which the suit arises applies. *Cleveland ex rel. Cleveland v. U.S.*, 457 F.3d 397, 403 (5th Cir. 2006). In this case, Louisiana law is applicable.

## III.  General Premises Liability -  Negligence Claims

Plaintiff's allegations are brief. After alleging the basic facts of the case, plaintiff alleges that, under the circumstances set forth in his Complaint, "the

persons responsible for safeguarding against such accidents, if they were private persons, would be liable to the plaintiff for his damages" [Complaint, Rec. Doc. 1, para. 8]. Plaintiff then alleges that "[t]he premises and the chair located on the premises were owned and maintained by the Administrative Office of the United States Court and that the person responsible for safeguarding against such accident was an employee of the United States acting in the course and scope of his employment" [Id.]. Defendant argues that plaintiff's Complaint makes no mention of any specific federal employee who may have negligently caused his injuries, nor was one revealed in discovery [defendant's Memorandum, Rec. Doc. 19, p. 7]. Defendant asserts that plaintiff may argue that he has asserted general negligence of government employees but that does not meet the requirements of the FTCA which requires the Court to focus on the acts of specific government employees [Id.]. Defendant also contends that the substance of plaintiff's claim is one of premises liability where plaintiff's Complaint fails to allege that specific individuals were negligent in any manner and that plaintiff cannot rely merely upon an allegation that would suggest that there is a government employee who should have warned individuals of the defective nature of the chair, as such an allegation is insufficient to meet the requirements of the Federal Tort Claims Act [Id]. Defendant relies on a series of decisions which have been rendered by district courts within the United States Court of Appeals for the Fifth Circuit precluding suits for general premises liability. Although plaintiff does not directly address the argument set forth by the United States nor the jurisprudence holding

11.

that the United States has not waived its sovereign immunity as to suits founded

on general state law premises liability,  plaintiff responds that strict liability is not

an issue as Louisiana abolished strict liability in 1996, and also contends that the

United States has not addressed the application of *res ipsa loquitor* as a doctrine

of negligence under Louisiana law.  [plaintiff's Memorandum in Opposition, Rec.

Doc. 22 at Part A].

Prior to the enactment of La. C.C. 2317.1, the Louisiana Supreme Court

defined premises liability:

> Under Louisiana law, liability for injuries sustained by one on the
> premises of another may be based on either strict liability or
> negligence. In an action asserting strict liability under La.C.C. art.
> 2317 the plaintiff bears the burden of proving: (1) the thing which
> caused damages was in the care, custody and control of the defendant;
> (2) the thing had a vice or defect which created an unreasonable risk
> of harm; and (3) the injuries and/or damage were caused by the vice
> or defect. *Sistler v. Liberty Mutual Insurance Co.*, 558 So.2d 1106
> (La.1990). The plaintiff asserting a claim against a premises owner
> based on negligence, or liability under La.C.C. art. 2315,where the
> sole basis alleged for holding the owner liable is his relation to the
> property, has the same burden, plus the additional burden of proving
> defendant's scienter, i.e., that defendant "knew or should have
> known" of the defect. Id. at 1112 n. 7; see also *Kent v. Gulf States
> Utilities Co.*, 418 So.2d 493 (La.1982) (footnotes omitted).

*Fontenot v. Fontenot*, 635 So.2d 219, 221 (La. 1994).  As plaintiff argues, with the

enactment of  La. C.C. art. 2317.1[3], strict liability claims under La. C.C. art. 2317

---

[3]The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or
defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known
of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by
the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this
Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an
appropriate case.

(continued...)

12.

were effectively turned into negligence claims.  *See Reitzell v. Pecanland Mall Associates, Ltd.*, 852 So.2d 1229, 1232 (La. App. 2 Cir. 2003).

In the case at bar, plaintiff does not seek in his Complaint to recover based on the specific act of an federal employee.[4]  Plaintiff instead argues extensively that he seeks to recover because of the allegedly defective chair.  Thus, the Court agrees with defendant that this case is one of premises liability under a negligence theory.   The Court finds, however, that the arguments presented by the United States that this Court has no jurisdiction over the matter lack merit.

A 1997 opinion from another Division of this Court that court held that the United States has not consented to be sued for general premises liability under state law.  *Cupit v. U.S.*, 964 F. Supp. 1104, 1112 (W.D. La. 1997).  In that case, the plaintiff tripped over a rolled rug at a United States Post Office in Simmesport, Louisiana, falling to the concrete.  Plaintiff sought recovery for damages from the United States and an independent contractor, David McGlothin d/b/a Avoyelles Carpet Cleaners, asserting that defendants were liable for her injuries under theories of strict liability and negligence. The *Cupit* court noted that as the  Fifth Circuit had apparently not defined the issue, the court agreed with the Fourth Circuit's analysis in *Berkman v. United States*, 957 F.2d 108, 113 (4th Cir. 1992), *to wit*, "We find nothing in the language of the act or in the legislative history of

---

[3](...continued)
LSA-C.C. Art. 2317.1

[4]In his memorandum, plaintiff indicates that Barry Johnson's department had procurement and maintenance responsibilities associated with the furniture in the department [plaintiff's Memoran-dum, Rec. Doc. 22 at p. 6] but no allegations were made against him in plaintiff's Compliant.

13.

the FTCA to indicate that Congress considered the existence of a generalized liability, attributable to the United States based on any breach of a state defined duty.  By expressly waiving immunity for the tortious conduct of its employees, and only its employees, the FTCA requires a more focussed approach that requires the courts to determine the relationship to the United States of the actor whose negligence might be imputed to the government under state law." *Cupit*, 964 F. Supp. at 1112, quoting *Berkman*, 957 at 113.

The *Cupit* court was mindful that district courts have applied state premises liability law against the United States under the FTCA. *Cupit,* 964 F. Supp. at 1112, citing *Torres v. United States*, 953 F. Supp. 1019 (N.D. Ill. 1997); *Kendrick v. United States*, 854 F. Supp. 453 (E.D. Tex.1994); *Cunningham v. United States*, 827 F. Supp. 415 (W.D. Tex.1993); *Evans v. United States*, 824 F. Supp. 93 (S.D. Miss.1993).  The court emphasized, however, that plaintiff had stated independent claims for negligence against the United States for acts or omissions by several postal employees, alleging that the employees were negligent for failing to supervise, failing to lock the doors to the Post Office, failing to post warning signs for the public and failing to provide safe access to the building.  *Cupit* 964 F. Supp. at 1112.

Other federal district Louisiana courts have agreed with the *Cupit* holding. *See Perkins v. U.S.*, No. CIV. A. 98-2636, 1999 WL 148442, *2 (E.D. La. Mar. 17, 1999)(holding, in agreement with other courts in the absence of Fifth Circuit Court of Appeals jurisprudence, that the FTCA does not permit suits for general

14.

premises liability to the extent that such theories resemble strict liability as opposed to "a more focused approach that requires the courts to [consider] ... the actor whose negligence might be imputed to the government under state law.") *citing Berkman v. United States*, 957 F.2d 108, 113 (4th Cir. 1992)); *Graubarth v. U.S. ex rel. Dept. of Interior*,  No. Civ.A. 05-0892, 2005 WL 3543763, *4 (E.D. La. Oct. 4, 2005) (holding that, where plaintiff's complaint made no mention of any specific federal employees for any specific acts of negligence, plaintiff's claim was one for premises liability and could not be sustained under the FTCA);  *See also*,  *Charles v. U.S. Postal Service*, No. 06-277, 2007 WL 925899, *1 (E.D. La. Mar. 13, 2007).

While mindful of these district court opinions, this Court will deny the United States' Motion to Dismiss.  First, any concern that an action alleging facts that would support a premises liability theory under Louisiana law based on strict liability has been negated by the enactment of La. Civ. Code art. 2317.1.  Further, plaintiff has not urged that the United States is liable under a strict liability theory.

Second, based on plaintiff's Complaint and the evidence presented, this Court finds that the language and holding of the United States Court of Appeals for the Fourth Circuit in *Berkman* does not preclude this Court from exercising jurisdiction, particularly in the absence of jurisprudence from the United States Court of Appeals for the Fifth Circuit.  In *Berkman*, the plaintiff, a passenger on a mobile lounge used to transfer him from an aircraft to the terminal at Washington's Dulles International Airport, slipped and fell while moving across a

15.

metal plate located in the doorway between the mobile lounge and the terminal.

*Berkman*,  957 F.2d at 110.  Berkman suit in federal court against the United

States alleging that the FAA was negligent in (1) lubricating the doors, (2) keeping

the premises clean, (3) seeing to it that "slippery foreign substances were not left

on the floor," (4) failing as a common carrier to transport him safely, and (5)

failing to warn him of the hazardous condition.  *Id.*  The government answered,

denying liability, and filed a third-party claim against Arrow General,

Incorporated, a company with which the FAA contracted to provide custodial

services at Dulles.  *Id.*  Berkman asserted that, under Virginia law, a private owner

or occupier of premises has a nondelegable duty to invitees to keep the premises

reasonable safe.  *Id.* at 112.  The *Berkman* court was faced with the question of

whether the Federal Tort Claims Act's independent contractor exception limited

the United States' waiver of sovereign immunity.  The court held that it did.  In

that context, the Fourth Circuit held:

> In waiving tort immunity, the federal government agrees to be
> fiscally responsible only when the tortious conduct is performed by
> government employees and not when performed by contractors.
> Section 1346(b) imposes on the United States liability for tortious
> conduct "of any employee ... acting within the scope of his office or
> employment" (emphasis added), and § 2671 *113 carefully defines
> employee to exclude "any contractor with the United States." This is
> but one of various limitations on the waiver of sovereign immunity
> that is imposed by the FTCA. See, e.g., 28 U.S.C. § 2674 (limiting
> the type of damage for which the United States is liable); 28 U.S.C. §
> 2680 (limiting the type of tort claim for which the United States is
> liable).

> The establishment of such a scheme in which Congress has placed
> the focus, when determining the applicability to the United States of

16.

state tort law, upon the person or entity whose tortious conduct a
plaintiff seeks to impute to the United States, we think necessarily
forestalls any notion that the government becomes liable, itself, for a
generalized breach of duty. Remembering that the FTCA is to be
narrowly construed against waivers of sovereign immunity, see
United States v. Orleans, 425 U.S. at 813-14, 96 S.Ct. at 1975-76, we
find nothing in the language of the act or in the legislative history of
the FTCA to indicate that Congress considered the existence of a
generalized liability, attributable to the United States based on any
breach of a state defined duty. By expressly waiving immunity for
the tortious conduct of its employees, and only its employees, the
FTCA requires a more focussed approach that requires the courts to
determine the relationship to the United States of the actor whose
negligence might be imputed to the government under state law.

Thus, while the delegation by a land owner of responsibility for the
physical performance of the tasks involved in making land safe may
be inconsequential to the determination of liability for the inadequate
performance of those tasks under Virginia law, such a delegation is
material for determining the liability of the United States under the
FTCA. Having so concluded, and recognizing that we find ourselves
in disagreement with the Eleventh Circuit's decision in Dickerson,
we agree with the district court's ruling that the application of the
independent contractor exception of § 2671 shields the United States
from tort liability which might otherwise arise from the performance
of duties which were reasonably delegated to the contractor.

Id. at 113-114.  The Fourth Circuit, however, remanded the case, noting that

plaintiff had alleged that the FAA "failed to use reasonable care while lubricating

the doors" and failed to inspect to see that slippery substances were not left on the

floor.  Id. at 114.  The Fourth Circuit indicated that, the fact that an independent

contractor may have been responsible for Berman's fall could not be viewed as

relieving the United States from liability where the plaintiff alleges that federal

employees also may have caused or contributed to the alleged tort and that the

complaint could not be dismissed in its entirety until the claims alleging negligence on the part of FAA employees were resolved . *Id.* at 114, 115.

While acknowledging  the language in *Berkman* and the tension created thereby, this Court does not find  that the decision necessarily leads to the conclusion that an action for negligence for general premises liability where the negligence of a specific employee has not been alleged is absolutely barred under the Federal Tort Claims Act.  Pertinently, while not addressing the precise issue in a decision subsequent to the 1992 *Berkman* case, in an unpublished decision, the Fourth Circuit affirmed the district court's dismissal of a premises liability claim on summary judgment in *Wood v. U.S.*, 1997 WL 42711, No. 96-1579 (4th Cir. Feb. 4, 1997), thus exercising its jurisdiction.  In that case, the plaintiff alleged that he slipped and fell on the wet floor in the entranceway of an Archdale, North Carolina Post Office during a heavy rainstorm when he was attempting to leave the building.  *Wood*, 1997 WL 42711 at *1.  Plaintiff alleged that the defendant United States negligently failed to remove the water from the floor.  The Fourth Circuit held:

> To succeed with this premises liability claim under North Carolina law, Wood must show either that Defendant negligently created the condition that resulted in the injury or negligently failed to correct the condition after receiving actual or constructive notice of it. *Roumillat v. Simplistic Enterprises, Inc*., 414 S.E.2d 339, 342-43 (N.C.1992). Because Wood failed to show that Defendant either created the condition or had actual or constructive knowledge of it, the district court properly granted summary judgment for Defendant.

*Id.*  Thus, *Wood* indicates to this Court that the Fourth Circuit's limitation on premises liability claims is less than absolute.

18.

Although, as the *Cupit* court indicated, this Court is not aware of a Fifth Circuit decision which addressed the precise issue of whether the government's consent to be sued for "the negligent or wrongful act or omission of any employee" allows suits for general premises liability, in at least one recent decision, *Bodin v. Vashenian, M.D.,* 462 F.3d 481 (5th Cir. 2006), the Fifth Circuit recognized a plaintiff's claim made pursuant to premises liability law.   In *Bodin*, patients of Vagshenian, a psychiatrist,  at an outpatient facility operated by the Department of Veterans Affairs, alleged that Vagshenian sexually assaulted them and claimed that the United States was liable for his assault and malpractice and for failing to take steps to prevent Vagshenian's actions. *Bodin*, 462 F.3d at 483. After a bench trial, the district court dismissed the complaints for lack of subject matter jurisdiction, observing that the United States has waived sovereign immunity for the tortious acts or omissions of its employees only when they occur within the scope of employment.  *Id.*  The Fifth Circuit reversed, holding that the district court erred in dismissing for lack of jurisdiction, plaintiffs' claims based on Vagshenian's coworkers' independent acts of negligence in failing to prevent the sexual assaults.  *Id.*, at 491.  The circuit court noted that the plaintiffs could only recover if the United States breached a duty independent of its employment relationship with Vagshenian.  *Id.*, at 489.  The circuit court reasoned that whether the United States owed an independent duty was a question of Texas state law and, under that law, noted the duty of a hospital to exercise reasonable care to safeguard its patients from known and reasonably known dangers which extends

to taking reasonable steps to prevent assaults by third persons.  *Id.*  The circuit court also noted, "similarly, a possessor of land owes a duty to invitees to protect them from foreseeable assaults on the premises," *Id.* at 489,  *citing Charrin v. Methodist Hosp.*, 432 S.W.2d 572, 574-75 (Tex.Civ.App.-Houston [1st Dist.] 1968, no writ) (hospital patient akin to business for purposes of premises liability. *See also Salim v. U.S.*, 382 F.2d 240, *242 (5th Cir. 1967) (applying Louisiana law providing that the duty owed an invitee by an occupier of premises includes the duty of ordinary care to keep its premises in a reasonably safe condition where plaintiff brought claim under the FTCA).

Moreover,  numerous cases in other jurisdictions, including federal appellate decisions applying various state laws, exist which recognize this theory of recovery.  *See Taylor v. U.S.*, 121 F.3d 86, 89-90 (2nd Cir. 1997) (holding, where plaintiff alleged that the government had actual or constructive notice that door which partially amputated child's finger was not functioning properly, that under New York law, a landowner's duty is not "limitless," and a landowner who did not create the dangerous condition, is liable for negligence when a condition on his land causes injury only when the landowner had actual or constructive notice of the condition); *Hilderbrand v. U.S. Dept. of Army*, No. 04-5676, 2006 WL 3791294, **1 (6th Cir. Dec. 26, 2006) (holding that, where plaintiff asserted premises liability claims pursuant to the FTCA after she fell on snow and ice on the premises of the federal Fort Knox military base, under Kentucky case law regarding premises liability, plaintiff was a business invitee and no duty was owed

20.

her as the snow and ice upon which she slipped was an "open and obvious" hazard); *Buckson v. U.S.*, D.C. Docket No. 03-00201-CV-4 151,  2005 WL 2077756 (11th Cir. Aug. 30, 2005)(holding that district court properly applied Georgia premises-liability law); *Wark v. U.S.*, 269 F.3d 1185 (10th Cir. 2001) (holding, in case involving a fatal automobile accident where plaintiffs sued the United States Forest Service for negligence under the FTCA, alleging that the Forest Service was negligent in maintaining the road and that the road's dangerous condition, including insufficient posted warnings caused the action and relying on the Colorado Premises Liability Statute which imposes specified duties on landowners, that the Forest Service was not a landowner within the statute's meaning and could not be held liable).  Accordingly, after consideration of plaintiff's Complaint and the record as a whole, the Court will deny the United States' Motion to Dismiss.

## IV.  Cross Motions for Summary Judgment

Plaintiff moves for summary judgment, setting forth the following grounds: (1) he was injured when sat in a chair that collapses; (2) the defendant United States owned and was responsible for maintaining and inspecting the chair; (3) the United States knew or should have known two bolts holding the chair were missing; (4) the United States knew or should have known that the bolts were missing when it recorded the chair's inventory tag that was located under the chair where the bolts holding the chair's back were visible; and (5) the United States regularly and frequently moved chairs around the courthouse and knew or should

21.

have known the chair was unstable by touching or moving it [plaintiff's Motion, Rec. Doc. 22 at p. 1].  The basis of plaintiff's Motion is the doctrine of *res ipsa loquitur* [plaintiff's Memorandum, Rec. Doc. 22 at p. 1] Alternatively, plaintiff urges that the evidence shows that the United States knew or should have known that screws were missing from the chair and knew or should have known that the chair posed a danger to those who used it [Id.].  In its own Alternative Motion for Summary Judgment, the United States argues that the uncontested material facts indicate that the United States did not owe a duty to plaintiff nor did it breach any duty to him [defendant's Motion, Rec. Doc. 19 at p. 1].

*A. Law Generally*

"The mere fact that an accident occurs, absent a res ipsa loquitur situation, does not give rise to even a presumption of negligence. Fault is determined by asking the question: How would a reasonably prudent individual have acted or what precautions would he have taken under the same or similar circumstances? Negligent conduct is determined in the light of the facts and environmental circumstances of each case." *Barrow v. Brownell,* 938 So.2d 118, 122, 2005-1627 (La. App. 1st  Cir. 2006).  Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. LSA-C.C. Art. 2315.  "In determining 'fault,' Louisiana courts apply a duty-risk analysis composed of three parts:

(1) Was the defendant's conduct a cause-in-fact of the harm?

(2) Was a duty imposed on the defendant by a general rule of law to protect this plaintiff from this type of harm arising in this manner?

(3) Was that duty breached?"

*Dupre v. Chevron U.S.A., Inc.*, 20 F.3d 154, 56 -157 (5th Cir. 1994).  In Louisiana the existence of a duty and its scope are questions of law. *Dupre*, 20 F.3d at 157. "Whether a duty is owed is a question of law." *Mundy v. Department of Health and Human Resources*, 620 So.2d 811, 813 (La.1993).  "Whether defendant has breached a duty owed is a question of fact." *Id.*  "In general, the owner or operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm. *Id.*  In *Walker v. Union Oil Mill, Inc.*, 369 So.2d 1043 (La.1979), the Louisiana Supreme Court delineated the general duty of a property owner. The *Walker* Court stated:

> In determining an owner's liability under Civil Code Articles 2315 and 2316 the test has been stated to be whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others. The owner and operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm. In determining a particular defendant's duty consideration should be given to the nature of the facility and the dangers presented by it. In considering a defendant's duty to a particular person, consideration should be given to the person's age, maturity, experience, familiarity with the premises and its dangers, and other such factors which might increase or decrease the risk of harm to that person. [Citation omitted.]

*Walker,* 369 So.2d at 1047.

23.

"While an owner and occupier of land has a duty to discover any unreasonably dangerous conditions existing on his premises and to either correct those conditions or to warn of their existence, an owner is not the insurer of the safety of visitors. The duty of a property owner is to keep their premises in a safe condition for use in a manner consistent with the purposes for which they are intended." *Monson v. Travelers Property & Cas. Ins. Co.*, 2007 WL 1202268, *2 (La. App. 5th Cir. 2007). *See also Nunez v. Isidore Newman High School*, 306 So.2d 457 (La. App. 4th Cir. 1975).

To impose liability for an unreasonably dangerous defect a plaintiff has the burden to show that the thing was in the custodian's custody or control, it had a vice or defect that presented an unreasonable risk of harm, the defendant knew or should have known of the unreasonable risk of harm, and that the damage was caused by the defect. *Monson*, 2007 WL 1202268 at *2, *citing* La. C.C. art. 2317.1; *Dauzat v. Thompson Const. Co., Inc.*, 02-989 (La. App. 5 Cir. 1/28/03), 839 So.2d 319.  A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty.  *Monson,* 2007 WL 1202268 at *2.

Thus, in order to recover, plaintiffs must establish that (1) the United States had custody of the chair; (2) the chair contained a defect, *i.e.*, a condition creating an unreasonable risk of harm; (3) the defective condition caused plaintiff's injuries; (4) the United States had actual or constructive knowledge of the defect; and (5) the damage could have been prevented by the exercise of reasonable care. *See Ports v. Circle K Stores, Inc.*,  395 F. Supp.2d 442, 445 (W. D. La. 2005).

The United States moves for summary judgment on the basis that, even if the Court were to find that plaintiff has stated a claim for negligence as opposed to general premises liability, plaintiff cannot show that the conduct of a federal employee was the cause in fact of the harm he sustained, nor can plaintiff show that the United States had a duty to inspect its furniture with the frequency and to the extent that would have been required to protect against the situation in which plaintiff was injured, but that, to the extent that the United States had a duty to inspect the furniture, it met that duty with regular and ongoing inventory checks [defendant's Memorandum in Opposition, Rec. Doc. 19, p. 10]. The United States urges that it is unknown when or how the screws came loose from the chair and that plaintiff's fall was the first indication of any defect [Id.]. Plaintiff also moves for summary judgment, arguing that the United States was negligent in failing to timely, regularly, and effectively inspect and maintain chairs held out for the use to the members of the bar, the public, and those using Judge Barbier's chambers [plaintiff's Memorandum, Rec. Doc. 22, p. 12]. Plaintiff argues that the case is one of *res ipsa loquitor* and alternatively that United States conducted no routine inspection of chairs, furniture or equipment and failed to discover missing screws that caused the chair to fail.

## B.  Res Ipsa Loquitor

The Louisiana Supreme Court has stated the rule of *res ipsa loquitor* as follows:

> A determination of a proper instance for application of the principle of res ipsa loquitur has been the subject of volumes of discussion by learned jurists and legal scholars, who have been at pains to point out that the maxim means only that the facts of the occurrence warrant the

inference of negligence, not that they compel such an inference; that the rule rests for its justification upon the common experience that accidents from such causes do not commonly occur in the absence of negligence; and that it is the lack of direct evidence indicating negligence on the part of the defendant as the responsible human cause of a particular accident which actually furnishes the occasion and necessity for invoking the rule in its strict and distinctive sense. It is generally conceded that res ipsa loquitur in no way modifies the rule that negligence will not be presumed. The application of the rule does not, therefore, dispense with he necessity that the plaintiff prove negligence, but is simply a step in the process of such proof, permitting the plaintiff, in a proper case, to place in the scales, along with proof of the accident and enough of the attending circumstances to invoke the rule, an inference of negligence, thereby obtaining an advantage and placing on the defendant the burden of going forward with proof to offset that advantage. When all the evidence is in, the question is still whether the preponderance is with the plaintiff. All that is meant by res ipsa loquitur is 'that the circumstances involved in or connected with an accident are of such an unusual character as to justify, in the absence of other evidence bearing on the subject, the inference that the accident was due to the negligence of the one having control of the thing which caused the injury. This inference is not drawn merely because the thing speaks for itself, but because all of the circumstances surrounding the accident are of such a character that, unless an explanation can be given, the only fair and reasonable conclusion is that the accident was due to some omission of the defendant's duty.

*Larkin v. State Farm Mutual Automobile Ins. Co.,* 97 So.2d 389 (1957).  Thus, there are three prerequisites to the application of the doctrine: (1) the accident must be of a kind which ordinarily would not occur in the absence of negligence on the part of someone; (2) the injury must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) the occurrence must not have been due to any voluntary action on the part of the plaintiff.  *Dugas v. Kansas City Southern Ry. Lines*, 473 F.2d 821, 824 (5th Cir. 1973).  Applying Louisiana law, the Fifth Circuit Court of Appeals has recognized

this evidentiary rule has potential for application in the context of Federal Tort

Claims actions.   *See e.g.*, *Toney v. U.S. Dept. of Army*, No. 05-30421, 2006 WL

3455954, **3, fn*** (5th Cir. Nov. 30, 2006) (indicating, in a case in which

plaintiff allegedly sustained injuries in the Fort Polk military base, that, as the case

before it was governed by ordinary negligence principles, *res ipsa loquitur* had

potential application if the appellants established the necessary factual predicates.

The circuit court did not decide whether *res ipsa loquitor* ever applied in a

Louisiana Merchants Liability Act case);  *Cleveland ex rel. Cleveland v. U.S.*, 457

F.3d 397, 406, fn 6 (5th Cir. 2006) (holding the trial court did not err when it ruled

that res ipsa loquitur did not apply under the facts of case which concerned

allegations of medical malpractice).  Louisiana courts have recognized that as *res*

*ipsa loquitor* is a qualification of the general rule that negligence is not to be

presumed, it must be conscientiously or sparingly applied.  *See Crenshaw v. Bayou*

*Land and Marine Contractors, Inc.,* 868 So. 2d 933 (La. App. 5th Cir. 2004);

*Williamson v. St. Francis Cabrini Hosp. of Alexandria*, 763 So.2d 50, 54 (La.

App. 3rd Cir.2000) (*relying* on *Day v. National U.S. Radiator Corp.*, 241 La. 288,

128 So.2d 660, 665 (1961)).

The United States has presented no evidence which would dispute that the

chair was in its exclusive control nor is it disputed that plaintiff had no warning

that the chair would fail as it did.  As to the issue whether the accident would not

have happened in the absence of negligence, plaintiff relies extensively on *Pear v.*

*Labiche's Inc.*, 301 So. 2d 336 (La. 1974).  In *Pear*, the plaintiff visited Labiche's

store to purchase a stove and was injured when the chair in which she was sitting collapsed.  The Louisiana Supreme Court applied the doctrine of *res ipsa loquitor*, noting that chairs are designed to hold their occupants, and in the absence of negligence the plaintiff's accident would not have occurred.  In so finding, the court noted that:

> Labiche offered no evidence other than the testimony of its salesman, Borne, who shed no light on the care Labiche exercised to protect its customers from injury by collapse of the faulty chair. The inference drawn from the failure to explain the accident's cause, together with the facts and circumstances of this case, is that the store did not exercise proper care. As a result, Labiche violated its duty to its customer.

*Pear*, 301 So. 2d at 339.

In the instant case, negligence is strenuously disputed by the United States and the Court is not convinced at this juncture that the incident would not have happened absent negligence on the part of the United States.  In *Labiche,* the Louisiana Supreme Court concluded from the facts presented that the accident would not normally have occurred in the absence of negligence – either in using the chair for a longer period of time than its design and construction warranted or in failing to make a proper and timely inspection to discover its defect.  *Labiche*, 301 So. 2d at 338.  The Court indicated that Labiche's salesman candidly testified that, although the chair had been in use at his desk for at least one year, he had never inspected the chair nor, to his knowledge, had any one else.  The United States offers evidence that the furniture inventory is a constant, ongoing process in support of its argument that it did not violate a duty of proper care.   Whether or

28.

not the trier of fact will ultimately determine this inventory process was sufficient for the United States to satisfy its duty to maintain its premises in a safe condition will be established at the trial of the matter.  Normally, the doctrine of *res ipsa loquitor* is determined at the conclusion of the trial.  *McCartney v. Columbia Heights Nursing Home Inc.,* 634 So.2d 927, 936 (La. App. 2nd  Cir.1994) *(citing Hollier v. Lay Down Service, Inc.*, 554 So.2d 746 (La. App. 3rd Cir.1989) and *Culver v. Ochsner Foundation Hospital*, 474 So.2d 984 (La. App. 5th Cir.1985), *writ denied* 477 So.2d 705 (La.1985)).  Accordingly, plaintiff may re-urge its applicability if appropriate at the close of evidence at the trial on the merits.

Plaintiff alternatively contends that the United States moved chairs around from office to office but no apparent inspection procedure was in place, that the faulty chair could have been discovered by a simple push, and that the United States had plenty of opportunity to discover the defective chair given the frequency with which judges and others were moving furniture in and out of offices.  In support of this argument, plaintiff relies on the Johnson testimony that "normally secretaries will call for us for just about everything and we then direct to wherever" [Johnson Depo. p. 6].  Plaintiff urges that, unless there is a problem with something, no proactive  inspection/maintenance procedure guards against defective furniture or equipment.  Plaintiff also relies on testimony by Algere and Johnson that no screws or bolts were found on the floor at the time of the accident, indicating that the bolts were missing at the time, thus suggesting that the bolts worked themselves out over time [Algere Depo. p. 8 and Johnson Depo p. 9].

Plaintiff emphasizes that anyone conducting an inventory of the chair would have discovered the defect because, according to the Johnson testimony, when an employee is recording inventory, "you have to normally grab the chair and move it to either look under the arms or the base.  Someone would have known it was broken [Johnson Depo. p. 25]".  The United States, in turn, relies on the Johnson deposition testimony that he was not aware of any complaints about the chair and that he did not remember having a chair repaired where the bolts were out of the seat and that he had been there since 1985 [Johnson Depo. p. 14, lines 15-17].  As to Johnson's statement that "someone would have known it was broken," the United States asserts that, considering the context of the testimony, the testimony indicated that was indicating that, if the chair had been broken when someone took the inventory, then "someone would have known" and appropriate action regarding the chair would have been taken and that the statement is consistent with Johnson's prior testimony that no one knew the chair had missing screws despite the constant ongoing inventory  [defendant's Memorandum in Response to Cross Motion for Summary Judgment, Rec. Doc. 30, p. 1].   Based on the pleadings and the evidence submitted by the parties, as set out hereinabove, the issues presented by parties present a classic case for the trier of fact to determine whether the United States breached a duty to the plaintiff to provide a safe place in its New Orleans federal courthouse in which to make a private telephone call.

30.

*Conclusion*

For the reasons set out herein, the Motion to Dismiss and in the Alternative Motion for Summary Judgment filed by defendant United States [Rec. Doc. 19] and plaintiff Walter K. Jamison, III's Motion for Summary Judgment on Liability [Rec. Doc. 22] will be denied.